ANGELA A. ROACH, APPELLEE, V. JOSEPH WOLFF ET AL.,
APPELLANTS.

FILED APRIL 17, 1914.   No. 17,606.

1. **Intoxicating Liquors**: ACTION FOR DEATH: SUFFICIENCY OF EVIDENCE.
Evidence examined and set out in the opinion, *held* sufficient to sus-
tain the verdict and judgment.

2. **Witnesses**: COMPETENCY: IDENTIFICATION.   Where a witness, in tes-
tifying to the actions of a certain individual who was a stranger
to him, states that he made inquiry in a crowd, where such individual
was well known, as to his identity, and in answer to the inquiry was
told his name, and such witness also correctly describes the size of
the individual and the manner in which he was dressed at the time
about which the witness is testifying, as shown by the undisputed testi-
mony of other witnesses in the case, it is not error for the trial
court to permit the testimony of such witness to go to the jury.

3. **Trial**: CONDUCT AND ARGUMENT OF COUNSEL.   The conduct of counsel
for plaintiff and the statements made by him, in his argument to the
jury, set out in the opinion, *held* not so clearly outside of the scope
of legitimate argument as to constitute error on the part of the trial
court in not preventing it.

4. **Bill of Exceptions**: AFFIDAVITS.   Affidavits used in support of a mo-
tion for a new trial on the ground of newly discovered evidence
must, in order to be considered on appeal, be preserved in the bill of
exceptions.

5. **Damages**.   The verdict of the jury examined in the light of the evi-
dence, and *held* not excessive.

APPEAL from the district court for Brown county:
WILLIAM H. WESTOVER, JUDGE.   *Affirmed.*

*J. A. Douglas, A. W. Scattergood* and *Albert S. Ritchie,*
for appellants.

*John M. Cotton, R. M. Johnson* and *M. F. Harrington,*
contra.

FAWCETT, J.

The plaintiff alleges substantially that at the time com-
plained of, July 4, 1911, the defendants were licensed sa-

loon-keepers in the village of Long Pine, Nebraska; that on July 4, while so engaged in that business, the defendants and each of them separately sold, furnished and delivered to John F. Roach, the then husband of plaintiff, large quantities of whisky, beer and other intoxicating liquors, which Roach then drank and consumed, and by reason thereof became intoxicated, and while in such intoxicated condition, during the night of July 4, 1911, he "wandered and walked upon the railroad track of the Chicago & Northwestern Railway Company in said Brown county, and while on said track by reason of such drunken and intoxicated condition did not know what he was doing or where he was, and did not realize his situation, and by reason of such drunken, intoxicated, and helpless condition so occasioned by such drinking of liquors was struck and run over by an engine and cars of said railway company, and was crushed, mangled and ground up by reason of being so run over, and was killed and instantly died;" that plaintiff was his wife, and that Ruth Roach, who is less than two years of age, is the daughter of the decedent and plaintiff; that at the time of the death of the husband and father plaintiff and the daughter were entirely dependent upon him for their support and maintenance; that decedent did support and maintain them and contributed large sums of money therefor; that by reason of his death they have been deprived thereof. Plaintiff brings the action in her own behalf and in behalf of said infant daughter, and prays damages in the sum of $25,000. A joint answer was filed by the defendants, in which they jointly and severally deny every allegation in the petition except such as are specifically admitted; the admissions being as to their being licensed dealers in intoxicating liquors, that they were so engaged on July 4, and the relationship of plaintiff and her daughter to the decedent. An affirmative defense was pleaded in the answer, but this defense was, by leave of court, stricken out of the answer by defendants before entering upon the trial. Thereupon the case went to trial upon the petition and an answer which is in effect a general denial only. There

was a verdict for the plaintiff for $5,000 and judgment thereon, from which defendants appeal.

The main question argued in the briefs is that the verdict is not sustained by the evidence and is excessive in amount. Three links in the chain are, in our judgment, established beyond reasonable doubt: (1) That on the day in question, being the 4th of July, 1911, decedent drank repeatedly in the saloons of both defendants; (2) that from such drinking he became intoxicated; and (3) that he was killed by a train on the Northwestern railroad. The evidence shows that the village of Long Pine was celebrating the National Day in an unprecedented manner for that village. Some of the witnesses testify that there were more people in Long Pine on that day than had ever been in the village before. The two saloons were doing such a thriving business that at times during the day, and particularly towards closing time, the patrons were compelled to elbow their way up to the bar to obtain drinks and to purchase bottles of liquor to take with them when the saloons closed.

The witness Bigelow testifies that shortly before 8 o'clock, while he was pressing his way up to the bar to get a bottle of liquor, "some fellow staggered against me to get up to the bar to get a bottle of whisky, and pretty near knocked me down, and I turned around and said to somebody there, 'Who is that fellow,' and some gentleman there said his name was Roach." Bigelow did not know Roach personally, so counsel for defendants objected on the ground that the testimony was incompetent and no foundation laid. The objection was overruled. After the answer had been given, counsel for plaintiff asked Bigelow to describe the man who was called Roach. He described him as a man who would weigh 170 to 175 pounds; that "he had on a light pair of pants" and a "kind of light colored shirt;" that he thought he wore a soft hat. This description of Roach tallies with the description given of him by other witnesses, notably the description given by the undertaker who took charge of the body where it was found by the side of the railroad track the following morn-

ing.  Under these circumstances, we are not willing to say
that the court erred in allowing this testimony to go to
the jury.  Bigelow then testifies that Roach called for and
obtained a bottle of whisky; that "he took it and went out;
said he was going home."  There is testimony to the effect
that about 5:20 or 6 o'clock in the evening the decedent
went to the railway station, evidently for the purpose of
taking a passenger train going west at that time, and re-
turning to his home, which we infer from the evidence
was near to a station to the west of Long Pine.  He entered
a coach on the train.  As he was entering, a brakeman
who was passing asked him if he had a ticket.  He said,
"No."  The brakeman who asked the question then called
the attention of another brakeman, who was standing by
the entrance to the coach, to the fact that Roach did not
have a ticket, and that brakeman entered the coach for
the purpose of removing him from the train.  Two of the
decedent's friends came up and requested permission to
go into the train and assist in getting decedent off.  Per-
mission was given and they entered.  Shortly thereafter
the decedent and his two friends, and the brakeman who
had followed the decedent into the car, all came out of the
coach, decedent getting off the train peaceably, but re-
marking to the brakeman that he would "see him again,"
or "see him later," or words to that effect.  That he then
went back up town and resumed his drinking is clearly
established.  There was some testimony that the decedent
was seen during the evening after closing time of the sa-
loons up to as late as nearly midnight.  Mrs. Nevers and
William Nevers both testify that during the evening, a lit-
tle before sundown, they saw a man walking west on the
railroad track; that the man was staggering from one rail
to the other.  They do not identify the man, but describe
how he was dressed.  Their description would tend to show
that the man they saw was the decedent.  Just how and
at what time of the night the decedent was killed is not
shown.  The evidence shows that after the passenger train,
from which decedent was ejected in the early evening, the
next train that passed was one going west a little after

midnight.  The next train to pass was from the west, which reached Long Pine about 2 o'clock in the morning.  After this train passed no other train passed over the road until about 7 o'clock in the morning of July 5, when a freight train passed, going west.  It is clear that he did not take the early evening train.  He could not have been killed by the freight train that passed west at 7 o'clock the next morning, for the reason that he was found soon after that train had passed, and the evidence of the undertaker is that at that time rigor mortis had set in, and that he must have been dead from 5 to 12 hours.  Other witnesses as to the cold condition of the body corroborate the testimony of the undertaker.  The evidence shows that after he was struck by the train that evidently killed him he was rolled or dragged some distance westward.  This would indicate that he was killed by the train that went west a little after midnight.  The trouble with this theory is this: When the body was found in the morning both legs had been completely severed from the trunk and the body was lying between the rails of the track, so that if he was killed by the train going west a little after midnight, then the train that passed east about 2 o'clock, as well as the train that went west at 7 o'clock in the morning, must have passed over his dead body.  Defendants claim that this could not possibly be, for the reason that if those trains had passed over the body it would have been struck by the locomotives and would have been badly mangled.  The evidence shows that the pilot of a locomotive is about four or four and a half inches above the top of the rails, and that the rails at the point where decedent is alleged to have been killed stood four inches above the ties, and that the road-bed was not graded above the tops of the ties, so that there would be a space of some eight or eight and a half inches between the ties and the pilot of the engine.  The testimony of the engineers is to the effect that this space is so small that the body of a man of the size of the decedent would have been rolled by the engine passing over it, and in their judgment would have been badly mangled.  One of the engineers testified, however, that he had

crawled under his engine with his regular working clothes on. We confess that we are unable to solve this problem. Hence, we cannot say that the jury's solution of it was wrong. We are forced to concede that it is possible that the decedent was killed by the midnight train and his body passed over by the two later trains.

One ground of complaint is misconduct of counsel for plaintiff while discussing this phase of the case in his argument to the jury. Counsel for plaintiff got down upon the floor, for the purpose of illustrating to the jury the possibility of an engine passing over his body without striking him. This demonstration was objected to by counsel for defendants, and we have the following record: "By the court: 'Any demonstration that is made is not to be considered as evidence in this case, and, if not made for the purpose of argument solely, is not competent.' By Mr. Harrington: 'It is made for the purpose of argument solely, and is made in response to the statement of counsel for the defense that it is impossible for a man to be run over by an engine, as this man was, and not be crushed to pieces.' By Mr. Douglas: 'The objection is renewed, and defendants further object, for the reason it is improper argument in a case of this character and kind.' By the court: 'The objection will be overruled.' " Counsel for defendants then objected to a statement made by counsel that "I can go through an aperture eight inches in height, and with a pair of shirts and everything on," for the reason that the same was improper argument. "By the court: 'The jury are instructed that they are not to consider such statements as evidence, or any part of the evidence in the case, but they may consider the same as part of the argument of counsel.' " Defendants then objected to the remark of counsel in his argument: "The voice of John Roach cries out from the cemetery, 'I am going home, and not loaf around town all night in Long Pine.' " The objection was overruled. Counsel for defendants have assailed this action on the part of counsel for plaintiff so vigorously that we have set it out fully. While the course pursued by counsel is somewhat unusual,

we cannot say that it was so clearly outside of the scope of legitimate argument that the court erred in not preventing it.

After the evidence was all in and one argument on each side had been made to the jury by counsel, defendants moved the court for a reopening of the case to take the testimony of two witnesses named, which, it was contended, would explain certain testimony given by one of the railroad engineers who had testified. Counsel for plaintiff stated that he did not desire to object, but the court on its own motion denied the request. This was assigned as error in the motion for a new trial, and the transcript shows that a number of affidavits were filed in support of the assignment. Those affidavits have not, however, been preserved in the bill of exceptions, and under our oft-repeated rule they cannot be considered.

Objection is made to certain instructions given by the court, and to the refusal of the court to give some of the instructions requested by defendants. We have examined them carefully and are unable to find prejudicial error in any of the instructions given by the court. As to those requested by defendants, we deem it sufficient to say that as to some of them the points are fully covered by the instructions given by the court, and as to the others we think they were not within the issues; notably, the point that decedent may have fallen or been thrown from a train while stealing a ride was expressly withdrawn from the issues tendered by the answer of defendants as originally filed, when they on their own motion struck out their affirmative defense which covered that point.

In the light of the evidence that the decedent was a strong, healthy, industrious man, 27 years of age, we cannot say that the verdict is excessive. The fact that decedent had a father who was helping him to get a start in life was an asset and not a liability.

Without pursuing the subject further, we deem it sufficient to say that we are unable to find any prejudicial error in the record; that, while the exact hour and the par-

ticular train by which decedent was killed are not clearly shown, we think the evidence, taken as a whole, sustains the verdict. Indeed, we think that a verdict the other way could not have been sustained.

The judgment of the district court is therefore

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.